UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| PASS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:21-cv-00050-CEA-CHS ) ) |
| LALO, LLC, and JAY TAYLOR, | ) ) |
| Defendants. | ) ) |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned Magistrate Judge having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Plaintiff PASS, LLC, ("PASS") has filed a motion for default judgment [Doc. 22] against Defendants Jay Taylor and LALO, LLC ("LALO"). For the reasons stated herein, it is **RECOMMENDED** that the motion for default judgment be **GRANTED**.

**I. Findings of Fact**

1. On or about March 31, 2020, PASS, in desperate need of personal protective equipment ("PPE") during the beginning of the COVID-19 pandemic, was introduced to LALO as a potential PPE supplier. [Doc. 14 ¶¶ 11–12.]

2. On or about April 1, 2021, PASS placed an order for 47,550 L4 disposable surgical gowns for a total cost of $118,875.00 to be delivered to PASS's Cleveland, Tennessee, facility within two weeks. [*Id.* ¶ 13.]

3. On or about April 13, 2020, PASS wired $60,000 to LALO. [*Id.* ¶ 14.]

4. Defendant Taylor represented to PASS that LALO's manufacturer was able to complete the April 1, 2020 order, as well as future orders. [*Id.* ¶ 15.]

5. On or about April 17, 2020, based on Taylor's word, PASS submitted another order for 172,745 gowns for $388,676.25 and wired LALO the full amount. [*Id.* ¶¶ 16–17.]

6. On or about April 22, 2020, PASS ordered 4,000 more gowns for $10,000 and wired LALO the full amount. [*Id.* ¶¶ 18–19.]

7. In total, PASS ordered 224,295 surgical gowns from Defendants and paid Defendants $458,676.25. [*Id.* ¶ 30.]

8. On May 20, 2020, six weeks after the first April 1 order—long after the gowns were promised to be delivered—PASS received 5,000 gowns. This was far less than the amount of surgical gowns ordered. [*Id.* ¶ 20.]

9. Defendant Taylor assured PASS that the remaining gowns were not far behind. [*Id.* ¶ 21.]

10. PASS received only 4,600 more gowns on June 1, 2020, and only 200 more gowns on June 3, 2020. [*Id.* ¶¶ 22–23.]

11. On June 10, 2020, after a week of not receiving any more gowns, and over two months after its initial order, PASS requested a refund for the undelivered gowns, to which Defendant Taylor agreed. [*Id.* ¶ 25.]

12. On June 19, 2020, PASS received a mere 125 additional gowns. [*Id.* ¶ 26.]

13. In June and July 2020, though he had already agreed to provide PASS a refund of the undelivered gowns, Defendant Taylor falsely and repeatedly represented that LALO was issuing a wire refund that PASS should receive immediately. [*Id.* ¶ 27.]

14. When PASS continued to not receive a refund, Defendant Taylor made various disingenuous excuses for the delay, such as that the refund amount was clearing LALO's account and held up in an "anti-money laundering" process. [*Id.*]

15. PASS eventually discovered that Defendants had engaged in a strikingly similar scheme with another entity, Gavi Medical, LLC. [*Id.* ¶ 28.]. Gavi Medical, LLC's complaint against Defendants, filed in the Western District of Kentucky, alleged that Defendants also falsely represented to Gavi Medical that "monies owed were being held up by governmental regulations affecting money laundering." *Gavi Medical LLC v. LALO, LLC, Jay Taylor, and Samir Taieb*, Case No. 3:21-cv-110, ECF Doc. 1 ¶ 52 (W.D. Ky.).

16. On July 20, 2020, PASS finally received a wire from Defendants, but for only $150,000—far less than the full refund amount. [Doc. 14 ¶ 29.]

17. In total, PASS received only 9,925 of the 224,295 surgical gowns it ordered from LALO and Taylor. [*Id.* ¶ 30.]

18. Taking into account the gowns received, the partial refund amount, and additional shipping fee assessed by LALO [*id.* ¶ 24], PASS is still owed $273,676.32 from LALO. [*Id.* ¶ 30.]

19. Defendants continued to promise that a full refund would be issued to PASS until at least October 2020, but a full refund was never issued. [Doc. 22-1 ¶ 10.]

20. PASS filed this action on March 11, 2021, seeking damages for breach of contract, intentional misrepresentation, and unjust enrichment. [Doc. 1.]

21. Defendant Jay Taylor is the registered agent of Defendant LALO. [Doc. 14 ¶ 4.]

22. On April 8, 2021, LALO was served through its registered agent Taylor by leaving a copy of the summons and complaint during usual office hours at Taylor's office with the manager in charge. [Doc. 9, at 1.]

23. On April 23, 2021, a copy of the summons and complaint was mailed to Taylor's office via first-class mail. [*Id.* at 2.]

24. Service on Defendant Taylor was attempted three times, and on one occasion, the process server was informed that Defendant Taylor was out of the country with an unknown date of return. [Doc. 10, at 2.]

25. On April 8, 2021, Defendant Taylor was served by leaving a copy of the summons and complaint at his usual place of business with the manager in charge. [*Id.*]

26. On April 23, 2021, a copy of the summons and complaint was mailed to Defendant Taylor via first-class mail. [*Id.* at 3.]

27. Defendants failed to answer or otherwise respond within the time allotted.

28. The Clerk has entered default against Defendants. [Docs. 20, 21.]

29. Defendant Jay Taylor is not a member of the United States' Armed Services and is not an infant or incompetent. [Doc. 26, Rose Aff.].

II. **Conclusions of Law**

   A. **PASS Properly Served Process on Defendants.**

   1. Pursuant to Federal Rule of Civil Procedure 4, both an individual and an unincorporated association may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state . . . where service is made." Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).

   2. Under California law, where service was made, service upon an unincorporated association like LALO may be made upon the registered agent by "leaving a copy of the summons and complaint during usual office hours in his or her office . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the

person to be served at the place where a copy of the summons and complaint were left." Cal. Civ. Proc. Code §§ 415.20(a), 416.40.

3. Service on Defendant LALO was proper pursuant to Federal Rule of Civil Procedure 4 and Cal. Civ. Proc. Code § 415.20(a), because service was made upon LALO's registered agent, Jay Taylor, by leaving a copy of the summons and complaint during usual office hours with the manager in charge and, afterward, by mailing a copy of the summons and complaint to LALO's offices via first-class mail. [Doc. 9.]

4. Likewise, under California law, "[i]f a copy of the summons and complaint cannot with reasonable diligence be personally delivered" to an individual defendant, "a summons may be served by leaving a copy of the summons and complaint at the person's . . . usual place of business . . . in the presence of . . . a person apparently in charge of his or her office [or] place of business, . . . and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Civ. Proc. Code §§ 415.20(b), 416.90.

5. A copy of the summons and complaint could not have been personally served on Defendant Taylor with reasonable diligence.

6. Specifically, service on Defendant Taylor was attempted three times, and on one occasion, the process server was informed that Defendant Taylor was out of the country with an unknown date of return. [Doc. 10, at 2.]

7. Accordingly, service on Defendant Taylor was proper pursuant to Federal Rule of Civil Procedure 4 and Cal. Civ. Proc. Code § 415.20(b), because a copy of the summons and complaint were left at Taylor's usual place of business with the manager in charge and, afterward, a copy of the summons and complaint was mailed to Taylor's place of business via first-class mail. [Doc. 10.]

**B.     PASS Is Entitled to Default Judgment Against Defendants.**

1. After the Clerk's entry of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, a party may apply for default judgment, and the Court may conduct a hearing—if needed, to perform an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter— prior to entering default judgment. Fed. R. Civ. P. 55(b).

2. At this stage, the complaint's factual allegations regarding liability are taken as true. *See Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007).

3. The Court then "examine[s] the sufficiency of plaintiff's allegations to determine whether the plaintiff is entitled to a default judgment." *Auto-Owners Ins. Co. v.*

*Davidson*, No. 1:17-CV-83, 2017 WL 5035085, at *1 (E.D. Tenn. Nov. 1, 2017) (internal quotation marks omitted).

4. Under Tennessee law, the elements of a claim for breach of contract are "'(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract.'" *Davidson v. Arlington Cmty. Schs. Bd. of Educ.*, 847 F. App'x. 304, 310 (6th Cir. 2021) (quoting *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

5. Breach of contract must be proven by the plaintiff by a preponderance of the evidence. *Harper v. Dixon*, No. E2015-00411-COA-R3-CV, 2016 WL 2954311, at *5 (Tenn. Ct. App. May 16, 2016).

6. Taking the factual allegations in the Amended Complaint as true, PASS is entitled to a default judgment against LALO for breach of contract.

7. Specifically, PASS alleges that LALO breached the terms of its agreement with PASS by not supplying the full extent of the surgical gowns ordered by PASS, which caused financial damages to Plaintiff PASS. [Doc. 14 ¶¶ 13–31].

8. Under Tennessee law, elements of a claim for intentional misrepresentation include: "'(1) that the defendant made a representation of present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.'" *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014) (quoting *Hodge v. Craig*, 382 S.W.3d 325, 342–43 (Tenn. 2012)).

9. The elements of a claim for intentional misrepresentation must be proven by a preponderance of the evidence. *Elchlepp v. Hatfield*, 294 S.W.3d 146, 150–51 (Tenn. Ct. App. 2008); *Rainey v. Binkley*, No. 3:16-CV-03293, 2018 WL 1697786, at *2 (M.D. Tenn. Apr. 6, 2018).

10. PASS alleges that Defendant Taylor intentionally made false material representations to PASS as to LALO's capabilities to supply PPE and as to refunds supposedly issued to PASS after LALO failed to comply with its contractual obligations, which PASS justifiably relied upon to its detriment. [Doc. 14 ¶¶ 15, 21, 25, 27, 30.]

11. Default judgment on PASS's claim for intentional misrepresentation is therefore warranted.

12. The elements of an unjust enrichment claim under Tennessee law are "(1) a benefit conferred upon defendant by the plaintiff (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for the defendant to retain the benefit." *Cash v. Country Tr. Bank*, No. 18-6097, 2019 WL 5291272, at *3 (6th Cir. Apr. 19, 2019) (citing *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005)).

13. Unjust enrichment must be proven by a preponderance of the evidence. *See Browns Installation, LLC v. Watermark Solid Surface, Inc.*, No. M2012-02264-COA-R3-CV, 2013 WL 5760636, at *3 (Tenn. Ct. App. Oct. 21, 2013).

14. PASS alleges that LALO and Taylor benefitted at PASS's expense and that it would be inequitable for LALO and Taylor to retain that benefit. [Doc. 14 ¶¶ 46–52.]

15. These allegations establish a claim for unjust enrichment.

16. Accordingly, PASS is entitled to default judgment on its claims for breach of contract, intentional misrepresentation, and unjust enrichment against Defendants.

C.     **PASS Is Entitled to $273,676.32 in Damages.**

1. "The measure of damages for a breach of contract is the nonbreaching party's expectation interest, measured by '(a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform.'" *White v. Parker*, No. 1:11-CV-294-TRM-CHS, 2018 WL 1279545, at *4 (E.D. Tenn. Feb. 20, 2018) (quoting *BVT Lebanon Shopping Ctr., Ltd. v. Wal-Mart Stores, Inc.*, 48 S.W.3d 132, 136 (Tenn. 2001)) ( *R&R adopted*, 2018 WL 1278420) (E.D. Tenn. Mar. 12, 2018).

2. The "pecuniary loss suffered . . . as a consequence of the recipient's reliance upon the misrepresentation" is an appropriate measure of damages for an intentional-misrepresentation claim. *Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012).

3. "The amount of the recovery [on an unjust-enrichment claim] is the value of the benefit conferred. . . ." *Simpson v. Bicentennial Volunteers, Inc.*, No. 01A01-9809-CV-00493, 1999 WL 430497, at *2 (Tenn. Ct. App. June 29, 1999) (citing *Bauman v. Smith*, 499 S.W.2d 935 (Tenn. Ct. App.1972)).

4. The court has discretion on whether to hold an evidentiary hearing in determining damages upon a motion for default judgment or to rule upon the papers submitted. *See* Fed. R. Civ. P. 55(b)(2).

5. A hearing is unnecessary because PASS has submitted an uncontested, sworn affidavit establishing damages. [Doc. 22-1]; *Vesligaj v. Peterson*, 331 F. App'x

351, 354 (6th Cir. 2009) ("[Rule 55(b)(2)], by its terms, allows but does not require the district court to conduct an evidentiary hearing."); *Broad. Music, Inc. v. Marler*, No. 1:09-CV-193, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009) ("[A] hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages.").

6. The Declaration of David Sherlin [Doc. 22-1] establishes Defendants' liability in the amount of $273,676.32.

7. Specifically, PASS paid Defendants $458,676.25 to deliver 224,295 L4 disposable surgical gowns, but only 9,925 surgical gowns valued at $24,812.50 were delivered. [Doc. 22-1 ¶¶ 3, 11.]

8. Taking into account the additional $10,187.43 shipping charges assessed by LALO, the amount of gowns actually received, and the partial $150,000 refund PASS received, PASS is still owed $273,676.32 from Defendants. [*Id.* ¶ 12.]

9. Accordingly, PASS is entitled to default judgment against Defendants in the amount of $273,676.32.

D. **PASS Is Entitled to Prejudgment and Post-Judgment Interest.**

1. In diversity cases, such as this one, "state law governs awards of prejudgment interest." *Jack Henry & Assocs., Inc. v. BSC, Inc.*, 487 F. App'x 246, 260 (6th Cir. 2012).

2. Under Tenn. Code Ann. § 47-14-123, prejudgment interest "may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum."

3. In determining whether to award prejudgment interest and the amount, Tennessee courts decide whether an award is fair, given the circumstances of the case and the following factors: "(1) promptness in the commencement of a claim, (2) unreasonable delay of the proceedings by either party, (3) abusive litigation practices by either party, (4) the certainty of the existence of an underlying obligation, (4) the certainty of the amount in dispute, and (5) prior compensation for the lost time value of the plaintiff's money." *America's Collectibles Network, Inc. v. Sterling Com. (Am.), Inc.*, 819 F. App'x 397, 401 (6th Cir. 2020) (quoting *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010)).

4. "Fairness will, in almost all cases, require that a successful plaintiff be fully compensated by the defendant for all losses caused by the defendant, including the loss of use of money the plaintiff should have received." *Id.* (quoting *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000)).

5. PASS should be awarded the full 10% prejudgment interest rate because all applicable factors weigh in favor of granting prejudgment interest.

6. Specifically, Defendants continued to promise that a full refund would be issued to PASS until at least October 2020 (though a full refund was never issued). [Doc. 22-1 ¶ 10.] PASS initiated this suit in March 2021, less than six months later. PASS therefore promptly commenced this action against Defendants.

7. PASS has not unreasonably delayed this litigation—instead, it has promptly initiated default-judgment proceedings upon Defendants' failure to respond to PASS's complaint.

8. Likewise, PASS has not displayed any abusive litigation practices; it is simply seeking what it is owed by Defendants. In comparison, Defendants repeatedly and falsely represented to PASS that a full refund was immediately forthcoming. [Doc. 22-1 ¶ 8.] Defendants made various false excuses when a full refund was not made, including representing that the incoming refund was delayed because it was held up in an "anti-money laundering" process. [*Id.*] Defendants have made these same misrepresentations to other entities who have ordered PPE from LALO and never received what was ordered. [Doc. 14 ¶ 28.]

9. The certainty of the amount in dispute is also clear—PASS paid Defendants $458,676.25 in connection with orders for surgical gowns. [Doc. 22-1 ¶ 3.] When offset by an additional shipping charge, the partial amount of gowns received, and the partial refund issued to PASS, Defendants still owe PASS $273,676.32. [*Id.* ¶ 12.]

10. PASS has not been compensated for the lost time value of these funds.

11. Accordingly, PASS is entitled to prejudgment interest at the maximum rate of 10%, starting from the date PASS first requested a full refund from Defendants[1]—June 10, 2020 (*id.* ¶ 7)—and continuing to the date the Court enters default judgment.

12. With a 10% prejudgment interest rate, prejudgment interest is accruing at $74.98 per day.

13. PASS is also entitled to post-judgment interest at the rate prescribed by 28 U.S.C. § 1961. *See Jack Henry*, 487 F. App'x at 260 (noting that federal law controls post-judgment interest in diversity cases); *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576,

---

[1] "Under Tennessee law, prejudgment interest in a breach of contract case accrues upon breach or default." *Lativafter Liquidating Tr. v. Clear Channel Commc'ns, Inc.*, No. 3:05-CV-578, 2008 WL 2697351, at *8 (E.D. Tenn. July 1, 2008), *aff'd* 345 F. App'x 46 (6th Cir. 2009). While Defendants failed to timely deliver the surgical gowns ordered by PASS as early as April 2020, PASS seeks prejudgment interest from the date it requested (and was promised) a full refund for ease of prejudgment-interest calculation.

586 (6th Cir. 2002) ("Under 28 U.S.C. § 1961, district courts are required to award post-judgment interest.").

### III. Conclusion

For the foregoing reasons, it is **RECOMMENDED**[2] that:

1. Default judgment be entered for PASS against LALO, LLC, and Jay Turner, jointly and severally, in the amount of $273,676.32.

2. PASS be awarded prejudgment interest at the rate of 10%—or $74.98 per day—from June 10, 2020, to the date default judgment is entered.

3. PASS be awarded post-judgment interest at the rate prescribed by 28 U.S.C. § 1961.

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified constitutes a forfeiture of the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).